United States District Court
Southern District of Texas
**ENTERED**
September 14, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| RICHARD LUIS AMEZQUITA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 2:23-CV-00162 |
| | § | |
| E. HOLMES, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION
## TO DISMISS CERTAIN CLAIMS AND TO RETAIN CASE

Plaintiff Richard Luis Amezquita, appearing *pro se* and *in forma pauperis*, has filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff's case is subject to screening pursuant to the Prison Litigation Reform Act.  *See* 42 U.S.C. § 1997e(c); 28 U.S.C. §§1915(e)(2), 1915A.

For the reasons set forth below and for purposes of screening, the undersigned respectfully recommends that the Court **RETAIN** the following claims:

- Plaintiff's deliberate indifference claim pertaining to the dangerous conditions in his cell against **Plumber Martinez** in his individual capacity;

- Plaintiff's deliberate indifference claim pertaining to the dangerous conditions in his cell against **Warden E. Holmes** in his official capacity for injunctive relief;

- Plaintiff's deliberate indifference claim pertaining to the denial of medical care against **Nurse Martinez** in her individual capacity; and

● Plaintiff's deliberate indifference claim pertaining to the denial of medical care against **Dr. Isaac Kwarteng** in his official capacity for injunctive relief.

The undersigned will order service on these defendants.

The undersigned recommends further that:

● Plaintiff's § 1983 claims for money damages against **Warden E. Holmes, Crystal Breauz, Dr. Isaac Kwarteng, and Gary W. Pendarius** in their official capacities be **DISMISSED without prejudice** as barred by the Eleventh Amendment; and

● Plaintiff's remaining § 1983 claims against **Defendants** in their respective individual and official capacities be **DISMISSED with prejudice** as frivolous and/or for failure to state a claim for relief.

## I.     JURISDICTION

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.  This case has been referred to the undersigned magistrate judge for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

## II.    PROCEDURAL BACKGROUND AND PLAINTIFF'S ALLEGATIONS

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID) and is currently housed at the McConnell Unit in Beeville, Texas.  Plaintiff's allegations in this case arise in connection with his current housing assignment.

In this action, Plaintiff sues the following defendants: (1) McConnell Unit Senior Warden E. Holmes ("Warden Holmes"); (2) Crystal Breauz, the Administrative Clinical Manager at the McConnell Unit infirmary ("Manager Breauz"); (3) Dr. Isaac Kwarteng

("Dr. Kwarteng"); (4) Nurse Martinez; (5) Gary W. Pendarius, Maintenance Supervisor at the McConnell Unit ("MS Pendarius"); and (6) Martinez, the plumber at the McConnell Unit ("Plumber Martinez"). (D.E. 1, pp. 2-3).  Plaintiff claims that Defendants acted with deliberate indifference in violation of his Eighth Amendment rights "by placing him in a cell that should have … remained unoccupied due to the issues with it." (D.E. 1, pp. 1, 6). Plaintiff further claims that the McConnell Unit medical staff acted with deliberate indifference by failing to address his three broken ribs in a timely and adequate fashion. (*Id.* at 1, 3, 6-7).  Plaintiff seeks declaratory, injunctive, and monetary relief.  (*Id.* at 7-8).

As directed by the Court, Plaintiff filed a More Definite Statement in which he explains his claims in more detail.  (D.E. 9).  Plaintiff alleges the following pertinent facts in his Original Complaint (D.E. 1) and More Definite Statement (D.E. 9). Plaintiff states that he is 43 years old.  (D.E. 9, p. 1). He is 5'8" tall and weighs 155 pounds.  (*Id.*).

Offender Carl Paschal ("Paschal") was a previous occupant of Plaintiff's cell located in the 7 Building of the McConnell Unit (Cell 30).  (D.E. 1, p. 4). During the third week of October 2021, Paschal slipped and fell on the flooded floor in his cell and suffered an injury to his head.  (D.E. 1, p. 4; D.E. 9, p. 2).  According to Plaintiff, the floor of the cell was flooded with more than an inch of water.  (D.E. 1, p. 4).  In addition to hitting his head, Paschal received a shock due to a short in the wiring behind a stainless-steel wall. (*Id.*).

Paschal "reported the fall and water leak on the floor to many officers as the shifts continued."  (D.E. 9, p. 2).  Plaintiff believes that officers logged the incident into their

system. (*Id.*).   At the time of the incident, Warden Holmes was not the senior warden of the McConnell Unit. (*Id.*).  Rather, Plaintiff states that Warden Castro was serving as the senior warden at that time. (*Id.*).  Plaintiff does not know whether Warden Castro was made aware of the incident involving Paschal. (*Id.*).

Paschal's cell mate, Daniel Laque Sr., also slipped and fell in the 30 Cell prior to Plaintiff moving into it. (*Id.*).  Paschal was moved from the 30 Cell in Building 7 only after his mother had complained to the warden's office during the third week of October 2021. (*Id.*).  Cell 30 was not fixed both during and after Paschal was moved from the cell. (*Id.*).

Two other inmates were housed in Cell 30 before Plaintiff and his cell mate, Mr. Jordan, were moved into the cell around mid-November 2021. (*Id.* at 3).  Plaintiff does not know the reason why he was moved into Cell 30 or who had the decision-making authority to move him into that cell. (*Id.*).

Prior to Plaintiff's slip and fall on February 26, 2022, Plaintiff wrote maintenance about the serious nature of the issues in his cell and requested an emergency repair. (D.E. 1, p. 5).  Plaintiff's request for repairs went unaddressed. (*Id.*).  Sergeant Quintanilla, a supervisor, advised Plaintiff "that repairs by maintenance are really slow, and that a grievance needs to be written." (*Id.*). At some point before Plaintiff fell in Cell 30, Plumber Martinez checked the pipe chase and indicated there were no parts to fix the issue. (*Id.*). The leak issues were fixed temporarily that afternoon. (*Id.*).

On February 27, 2022, March 4, 2022, and March 15, 2022, Plaintiff submitted I-60 requests seeking maintenance repair for the non-stop water leaks and electrical issues in Cell 30.  (D.E. 9, p. 3).  Plaintiff does not indicate whether he received any responses to these I-60 requests submitted after the slip-and-fall incident on February 26, 2022.  Plaintiff states that the electrical issues "remained unrepaired for a few more weeks."  (*Id.*).

Plaintiff alleges that, on February 26, 2022, water was "coming from the faucet … non-stop" and that water accumulated on the floor despite his attempts to mop up the water.  (*Id.* at 4).  That day, as a result of standing water on the floor of Cell 30, Plaintiff slipped, fell on the floor, and suffered three broken ribs.  (*Id.* at 3-4; D.E. 1, p. 4).  Following the slip and fall, Plaintiff was in a great deal of pain and lacked mobility.  (D.E. 1, p. 4).

Between February 26, 2022 and March 15, 2022, Plaintiff submitted several I-60 requests seeking medical attention for his injuries suffered in the slip and fall.  (D.E. 9, p. 4).  Plaintiff's I-60 request submitted on February 26, 2022 was neither answered nor returned.  (*Id.*).  Plaintiff's I-60 request submitted on March 4, 2022 was returned on March 9, 2022 by Registered Nurse D. Matfield.  (*Id.*).  Plaintiff acknowledges that he was seen by Nurse Martinez on March 4, 2022.  (*Id.* at 5).  Nurse Martinez, however, informed Plaintiff that he could not be examined or seen regardless of having broken ribs and that he should submit another sick call request and wait.  (*Id.*).  She further denied Plaintiff any requested pain medications.  (*Id.*).  No medical providers or doctors were available that day to provide Plaintiff any treatment.  (D.E. 1, p. 5).  On a scale of 1 to 10, with 10 being the

highest level of pain, Plaintiff described his pain level on March 4, 2022 to be a 9.  (D.E. 9, p. 5).

Plaintiff submitted a third I-60 request on March 15, 2022.  (*Id.*).  Plaintiff explains that the following statement was included on his third I-60 requests: "3rd request for x-rays and pain medication for broken ribs from water leak in cell[,] request for K.O.P. ibuprofen pain meds refill."  (*Id.* at 4).  Plaintiff describes his pain levels between March 2 and March 23, 2022 to be consistent at 9.  (*Id.* at 5).

On March 17, 2022, Physician Assistant E. Echavarry ordered x-rays and pain medication in the form of 600mg Ibuprofen for Plaintiff.  (*Id.* at 6).  According to Plaintiff, the Ibuprofen did not alleviate the pain.  (*Id.*).  Plaintiff was further provided with an Abdominal Binder to wear and was directed, presumably by PA Echavarry, to have minimal movement.  (*Id.* at 7). Plaintiff was not seen by Dr. Kwarteng on this date.  (*Id.*).  On March 23, 2022, Plaintiff received x-rays, which revealed a diagnosis of three broken ribs.  (D.E. 1, pp. 5, 7).  While being seen by an x-ray technician and another registered nurse that day, Plaintiff "has no knowledge if Nurse Martinez, Manager Breaux, or Dr. Kwarteng were or were not present on March 23, 2022.  (D.E. 9, p. 6).

On March 28, 2022, Plaintiff was seen by PA Echavarry for a follow-up appointment.  (*Id.* at 6).  Plaintiff has not received any follow-up x-rays on his broken ribs.  (*Id.* at 7).  He does not know whether his ribs have fully healed.  (*Id.*).  Plaintiff believes that, due to the delay in receiving a proper diagnosis of broken ribs, his ribs have healed

incorrectly.  (D.E. 1, p. 5).  Plaintiff describes his current pain level to be a 4.  (D.E. 9, p. 7).

Plaintiff states that Warden Holmes was the McConnell Unit's senior warden at the time his filed this action.  (*Id.*).  According to Plaintiff, Warden Holmes "is legally responsible for the operations of the unit as well as the supervision, care, and conduct of staff and prisoners of the institution."  (D.E. 1, p. 2).  Plaintiff sues Warden Holmes in his individual and official capacities.  (D.E. 1, p. 2; D.E. 9, p. 7).

Plaintiff states that Manager Breauz "is the Administrator that oversees medical operations."  (D.E. 9, p. 8).  Plaintiff alleges that she is responsible for making "the determination as to whether injuries alleged in inmate grievances are in need of immediate care or not."  (*Id.*).  On May 11, 2022, Manager Breauz responded to one of Plaintiff's Step 2 grievances (Grievance No. 2022082407).  (*Id.*).  Plaintiff sues Manager Breauz in her official capacity.  (*Id.*).

Dr. Kwarteng is the medical director at the McConnell Unit.  (*Id.*; D.E. 1, p. 3).  Dr. Kwarteng works with Manager Breaux and would have received consultations from other medical providers at the McConnell Unit.  (*Id.*).  Dr. Kwarteng is responsible for providing advice in a supervisory manner to medical providers at the unit and to insure inmates receive adequate medical care.  (D.E. 1, p. 3).  Plaintiff sues Dr. Kwarteng in his official capacity.  (D.E. 9, p. 8).

Plaintiff states that Nurse Martinez works in the McConnell Unit infirmary.  (D.E. 1, p. 3). Plaintiff claims that Nurse Martinez acted with deliberate indifference to his

serious medical needs by denying him care on March 4, 2022.  (D.E. 9, p. 8).  Plaintiff sues Nurse Martinez in her individual capacity.  (*Id.*).

Plaintiff states that MS Pendarius is "legally responsible for the maintenance that is needed at the" McConnell Unit.  (D.E. 1, p. 3).  MS Pendarius "overseas operations of unit maintenance and would normally have logs or requests for repairs and serious issues that are documented by plumbers and electricians."  (D.E. 9, p. 9).  According to Plaintiff, MS Pendarius should be held accountable if he was made aware of the unlivable conditions on Cell 30 and failed to alert the unit administration about the need to "Red Flag" a cell.  (*Id.*). Plaintiff sues MS Pendarius in his official capacity.  (*Id.*).

Plaintiff states that Plumber Martinez "is responsible for receiving work orders and supervise inmate workers who make the ne[e]ded repairs to facility systems."  (D.E. 1, p. 3). Plumber Martinez also "is responsible for reporting serious issues which could cause serious life-threatening injuries to staff and/or inmates."  (*Id.*).  Plaintiff claims that Plumber Martinez acted with deliberate indifference to Plaintiff's health by failing to notify his supervisors that his cell was unlivable and would persist until needed repairs of Cell 30 were made.  (D.E. 9, p. 9).  Plaintiff sues Plumber Martinez in his individual capacity. (*Id.*).

## III.   GOVERNING LAW

### A.  Legal Standard for Screening of Plaintiff's Action

When a prisoner seeks to proceed *in forma pauperis* the Court shall evaluate the complaint and dismiss it without service of process if the Court finds the complaint frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A. *See* 28 U.S.C. § 1915(e)(2)(B) (providing that a court shall review an *in forma pauperis* complaint as soon as practicable and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from an immune defendant). A claim is frivolous if it has no arguable basis in law or fact.  *Neitzke v. Williams,* 490 U.S. 319 (1989).  A claim has no arguable basis in law if it is based on an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist."  *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998). A claim has no arguable basis in fact if "after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless."  *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998).

"In analyzing the complaint, [the Court] will accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff."  *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir. 1999).  "The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim.  Thus, the Court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Id.* (citations omitted).  "Threadbare recitals of the elements of a cause of action, supported

9 / 26

by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff must allege sufficient facts in support of its legal conclusions that give rise to a reasonable inference that Defendant is liable. *Id.*; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The factual allegations must raise Plaintiff's claim for relief above the level of mere speculation. *Twombly*, 550 U.S. at 555. As long as the complaint, taken as a whole, gives rise to a plausible inference of actionable conduct, Plaintiff's claim should not be dismissed. *Id.*

### B.  Relevant law regarding 42 U.S.C. § 1983

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law. *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988). A defendant acts under color of state law if he misuses or abuses official power and if there is a nexus between the victim, the improper conduct, and the defendant's performance of official duties. *Townsend v. Moya,* 291 F.3d 859, 861 (5th Cir. 2002).

"Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele,* 709 F.2d 381, 382 (5th Cir. 1983). There is no vicarious or *respondeat superior* liability of supervisors under section 1983. *Thompkins v. Belt,* 828 F.2d 298, 303-04 (5th Cir. 1987). *See also Carnaby v. City of Houston,* 636 F.3d 183, 189 (5th Cir. 2011) (the acts of subordinates do not trigger individual § 1983 liability for supervisory officials).

A supervisory official may be held liable only if "(1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury." *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011).

## IV.   DISCUSSION

### A.  Eleventh amendment immunity and Official Capacity (Money Damages)

A suit against a state officer in his or her official capacity is effectively a suit against that state official's office. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). The Eleventh Amendment, however, bars claims for money damages against a state or state agency. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996); *Aguilar v. Texas Dep't of Criminal Justice,* 160 F.3d 1052, 1054 (5th Cir. 1998).  As such, an action for monetary damages against a state official in his or her official capacity is one against the state itself and is barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  The Fifth Circuit has extended the Eleventh Amendment immunity specifically to TDCJ officers and officials acting in their official capacities. *See Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) (Eleventh Amendment bars prisoner's suit for money damages against prison officials in their official capacities).

To the extent that Plaintiff sues Warden Holmes, Manager Breauz, Dr. Kwarteng, and MS Pendarius in their official capacities for money damages, such claims are barred by the Eleventh Amendment.  Thus, the undersigned respectfully recommends that

Plaintiff's claims for money damages against Warden Holmes, Manager Breauz, Dr. Kwarteng, and MS Pendarius in their official capacities be dismissed.[1]

### B. Deliberate Indifference – Slip and Fall

#### (1)    General Legal Principles

The Eighth Amendment prohibits cruel and unusual punishment. U.S. Const. amend. VIII. The Eighth Amendment prohibits cruel and unusual punishment. U.S. Const. amend. VIII. "The Constitution does not mandate comfortable prisons . . . but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (quoting *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995) (per curiam) (internal quotations omitted)). An Eighth Amendment violation occurs when a prison official acts with deliberate indifference to an inmate's health and safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

"Deliberate indifference is an extremely high standard to meet." *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 755 (5th Cir. 2001). The test for deliberate indifference has both an objective and subjective prong. *Id.* at 839. Under the objective prong, the inmate must first prove "an objective exposure to a substantial risk of harm."

---

[1] Claims implicating the Eleventh Amendment are dismissed without prejudice because the Eleventh Amendment deprives the Court of subject matter jurisdiction. *See Planned Parenthood Gulf Coast, Inc. v. Phillips*, 24 F.4th 442, 450 (5th Cir. 2022) (observing that "the Eleventh Amendment generally deprives federal courts of jurisdiction" over certain suits); *United States v. Texas Tech Univ.*, 171 F.3d 279, 285 n.9 (5th Cir. 1999) ("While the Supreme Court has left this question open, [the Fifth Circuit] has repeatedly referred to the Eleventh Amendment's restriction in terms of subject matter jurisdiction.").

*Valentine v. Collier*, 993 F.3d 270, 281 (5th Cir. 2021). To prove the subjective prong of the deliberate indifference test, the inmate must establish that the prison official "had subjective knowledge that the inmate faced a substantial risk of harm [to the inmate's health and safety] and … [consciously] disregarded the risk." *Id.*; *see also Lawson v. Dallas Cnty.*, 286 F.3d 257, 262 (5th Cir. 2002). In other words, a prison official acts with deliberate indifference if he knows that an inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. *Farmer*, 511 U.S. 825, 847 (1994).

A prison official's knowledge of substantial risk may be inferred if the risk was obvious. *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006). The Fifth Circuit nevertheless has "consistently recognized . . . that 'deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm.'" *Dyer v. Houston*, 964 F.3d 374, 381 (5th Cir. 2020) (quoting *Thompson v. Upshur Cnty., Tex.*, 245 F.3d 447, 458-59 (5th Cir. 2001)); *see also Aguirre v. City of San Antonio*, 995 F.3d 395, 420 (5th Cir. 2021) ("Negligence or even gross negligence is not enough, the officials must have actual knowledge of the substantial risk"). The Supreme Court further explains that "an official's failure to alleviate a significant risk that he should have perceived but did not" falls short of constituting deliberate indifference. *Farmer*, 511 U.S. at 838. Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of humankind. *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997) (citations omitted).

*(2)   Analysis*

**Plumber Martinez**

In *Nobles v. Grimes*, 350 F. App'x 892 (5th Cir. 2009), inmate Reginald Noble alleged that he had "sustained a head contusion after he slipped and fell in standing water in the prison shower area at his place of incarceration." *Id.* at 893. In affirming the dismissal of Noble's deliberate indifference claim, the Fifth Circuit determined that:

> Noble's allegations are insufficient to show that the defendants were deliberately indifferent to a substantial risk of serious harm. Noble's allegations specifically do not permit a finding that the defendants either (a) has sufficient knowledge to infer that the conditions in the shower area presented a substantial risk of harm to prisoners' health and safety or (b) actually drew an inference that inmates faced a risk of harm from the conditions in the shower area. Instead, Noble's complaint, at most, alleges a claim of negligence, which is not actionable under 42 U.S. C. § 1983.

*Id.*

Here, Plaintiff specifically alleges that:

- Offender Paschal, a previous occupant of Cell 30, slipped and fell on the flooded cell floor and suffered a head injury as well as a shock. (D.E. 1; p. 4; D.E. 9, p. 2).

- Paschal reported his fall and water leak to McConnell Unit officers. (D.E. 9, p. 2).

- Plaintiff believes that officers logged the leak into their system. (*Id.*).

- Paschal's cell mate, Daniel Laque Sr., also slipped and fell in the 30 Cell prior to Plaintiff moving into it. (*Id.*).

- Paschal was moved from the 30 Cell only after his mother had complained to the warden's office during the third week of October 2021. (*Id.*).

- Cell 30 was not fixed both during and after Paschal was moved from the cell. (*Id.*).

- Prior to Plaintiff's slip and fall on February 26, 2022, Plaintiff wrote maintenance about the serious nature of the issues in his cell and requested an emergency repair. (D.E. 1, p. 5).

- Plaintiff's request for repairs went unaddressed. (*Id.*).

- Before Plaintiff fell in Cell 30, Plumber Martinez checked the pipe chase and indicated there were no parts to fix the issue. (*Id.*).

- The leak issues were fixed temporarily that afternoon. (*Id.*).

Plaintiff's allegations further indicate that Plumber Martinez, despite knowing of the serious issues caused by the water leak in Cell 30, failed to notify his supervisors that Cell 30 was unlivable before Plaintiff's slip and fall on February 26, 2022, and that the conditions would persist until needed repairs were made. (D.E. 1, p. 3).

Plaintiff's allegations reflect that, in contrast to the factual scenario present in *Nobles*, Plumber Martinez was well aware of the dangerous conditions present in Cell 30 before Plaintiff's slip and fall occurred on February 26, 2022. Indeed, according to Plaintiff, two inmates living in Cell 30 prior to Plaintiff moving in had slipped and fallen on the flooded floor due to the water leak with one of the inmates suffering injuries. Plaintiff's allegations, accepted as true for purposes of screening, suggest that Plumber Martinez may have actually drawn the inference Plaintiff was at substantial risk of serious harm and then consciously disregarded such risk by failing to take any actions to report the serious water leak and bring about a permanent fix to the conditions in Cell 30. *Cf.*

*Buchanan v. Sellars*, No. 1:23cv223, 2023 WL 5270545, at *2 (E.D. Tex. Jul. 10, 2023), *recommendation adopted* 2023 WL 5250511 (E.D. Tex. Aug. 15, 2023) (finding no deliberate indifference in a slip and fall incident where inmate makes no allegation defendant was aware of the slippery floor near the water cooler); *Robinson v. Dallas Cnty. Jail Facility*, 2019 WL 7584312, at *3 (N.D. Tex. Dec. 26, 2019), *recommendation adopted* 2020 WL 230942 (N.D. Tex. Jan. 15, 2020) (rejecting inmate's deliberate indifference claim in a slip and fall incident where inmate "has failed to allege that any prison official was aware of the water spot on the floor or knew that [the inmate] faced a substantial risk of serious harm and that prison officials disregarded the risk").

Accordingly, the undersigned respectfully recommends that Plaintiff's deliberate indifference claim pertaining to the dangerous conditions in his cell against Plumber Martinez in his individual capacity be retained.

### MS Pendarius – Individual Capacity

Plaintiff alleges that MS Pendarius, as the supervisor of unit maintenance, is "legally responsible for the maintenance that is needed at the" McConnell Unit.  (D.E. 1, p. 3; D.E. 9, p. 9).  According to Plaintiff, MS Pendarius should be held accountable if he was made aware of the unlivable conditions on Cell 30 and failed to alert the unit administration about the need to "Red Flag" a cell.  (*Id.*).

Plaintiff sues MS Pendarius in his official capacity.  (*Id.*).  Out of an abundance of caution, the undersigned will consider whether Plaintiff states a deliberate indifference claim against MS Pendarius in his individual capacity.  While speculating whether MS

Pendarius knew of the living conditions in Cell 30, Plaintiff alleges no specific facts to indicate that MS Pendarius actually had knowledge of the water leak in Cell 30 and then took no actions to remedy the situation.  His allegations, therefore, fail to show that MS Pendarius had any personal involvement in connection with Plaintiff's February 26, 2022 slip and fall or that he otherwise implemented any unconstitutional policies.  *See Porter v. Epps*, 659 F.3d at 446; *Thompkins,* 828 F.2d at 303-04; *Thompson v. Steele,* 709 F.2d at 382.  Accordingly, the undersigned respectfully recommends that Plaintiff's deliberate indifference claims against MS Pendarius in his individual and supervisory capacity, pertaining to the dangerous conditions in his cell, be dismissed with prejudice as frivolous and/or for failure to state a claim for relief.

## Warden Holmes – Individual Capacity

Plaintiff states that Warden Holmes was the McConnell Unit's senior warden at the time his filed this action and "is legal responsible for the operations of the unit as well as the supervision, care, and conduct of staff and prisoners of the institution."  (D.E. 1, p. 2; D.E. 9, p. 7).  Plaintiff acknowledges, however, that Warden Holmes was not the senior warden at the time of the incident involving inmate Paschal, and therefore, had no knowledge of that incident.  (D.E. 9, p. 2).  Plaintiff otherwise alleges no specific facts to show that Warden Holmes had any personal involvement in connection with Plaintiff's February 26, 2022 slip and fall or that he otherwise implemented any unconstitutional policies.  *See Porter v. Epps*, 659 F.3d at 446; *Thompkins,* 828 F.2d at 303-04; *Thompson v. Steele,* 709 F.2d at 382.  Accordingly, the undersigned respectfully recommends that

Plaintiff's deliberate indifference claims against Warden Holmes in his individual capacity, pertaining to the dangerous conditions in his cell, be dismissed with prejudice as frivolous and/or for failure to state a claim for relief.

**Official Capacity – Injunctive Relief**

Liberally construed, Plaintiff seeks injunctive relief in connection with the alleged dangerous conditions in Cell 30.  Plaintiff's allegations suggest that his requests seeking maintenance repair for the non-stop water leaks in Cell 30, following the incident on February 26, 2022, have gone unaddressed and that dangerous conditions may remain present in Cell 30 due to water leaks.  (*See* D.E. 9, p. 3).

For purposes of injunctive relief, Plaintiff's allegations indicate that Warden Holmes would be the appropriate official to provide any requested injunctive relief with respect to this deliberate indifference claim.  The allegations presented in Plaintiff's original complaint indicate that Warden Holmes, as the current senior warden at the McConnell Unit, has the ultimate authority to order repairs in inmate cells.  (D.E. 1, pp. 2-3).  Accordingly, the undersigned respectfully recommends retaining this claim against Warden Holmes in his official capacity for injunctive relief and dismissing same with prejudice against MS Pendarius in his official capacity for injunctive relief as frivolous and/or for failure to state a claim for relief.

### C.  Deliberate Indifference – Medical Needs

#### (1)    *General Legal Principles*

In order to state a § 1983 claim for denial of adequate medical treatment, a prisoner must allege that prison officials acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 105 (1976); *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991).  The test for deliberate indifference has the same objective and subjective prongs detailed above in the context of medical care.  *See Farmer*, 511 U.S. at 839; *Valentine*, 993 F.3d at 281.

Deliberate indifference may be exhibited by prison doctors in their response to prisoners' needs, but it may also be shown when prison officials have denied an inmate prescribed treatment or have denied him access to medical personnel capable of evaluating the need for treatment.  *Estelle*, 429 U.S at 104-05.  In the context of medical treatment, the prisoner must show "that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."  *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (internal quotation marks and citation omitted).  In addition to establishing the objective and subjective prongs, an inmate "must prove that the delay or denial of medical treatment resulted in substantial harm, such as additional pain." *Petzold v. Rostollan*, 946 F.3d 242, 249 (5th Cir. 2019) (cleaned up).

As discussed above, the Fifth Circuit has "consistently recognized … that 'deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm.'"  *Dyer*, 964 F.3d at 381 (quoting *Thompson*, 245 F.3d at 458-59).   Deliberate indifference again encompasses only

unnecessary and wanton infliction of pain repugnant to the conscience of mankind. *McCormick*, 105 F.3d at 1061 (citations omitted).

   *(2) Analysis*

### Nurse Martinez

  Plaintiff alleges that he suffered three broken ribs after slipping and falling on the floor of his cell on February 26, 2022. (D.E. 1, p. 4; D.E. 9, p. 4). Following the slip and fall, Plaintiff was in a great deal of pain and lacked mobility. (D.E. 1, p. 4). Plaintiff further alleges that: (1) he was seen by Nurse Martinez on March 4, 2022; (2) Nurse Martinez, informed Plaintiff that he could not be examined or seen that day regardless of having broken ribs and that he should submit another sick call request and wait; (3) Nurse Martinez denied Plaintiff pain medications; (4) on a scale of 1 to 10, with 10 being the highest level of pain, Plaintiff described his pain level on March 4, 2022 to be a 9; (5) Plaintiff did not receive medical attention until March 17, 2022, when PA Echavarry ordered x-rays and pain medication in the form of 600mg Ibuprofen for Plaintiff; and (6) Plaintiff describes his pain levels between March 2 and March 23, 2022 to be consistent at 9. (D.E. 9, pp. 5-6).

  Plaintiff's allegations, accepted as true for purposes of screening, indicate that he had serious medical needs regarding his broken ribs and extreme pain levels following the February 26, 2022 slip fall. His allegations, therefore, are sufficient to show an "objective exposure to a substantial risk of serious harm" based on his need for medical care immediately after the slip and fell. *See Petzold*, 946 F.3d at 249. Plaintiff further has

alleged facts sufficient to show that Nurse Martinez was aware of a substantial risk of harm to Plaintiff as a result of his painful rib injuries but disregarded such risk by denying him immediate medical care for his injuries. *Valentine*, 993 F.3d at 281. Lastly, Plaintiff has alleged facts sufficient to show that the denial of medical treatment by Nurse Martinez resulted in substantial harm, as Plaintiff suffered additional extreme pain for days due to his unattended broken ribs. *Petzold*, 946 F.3d at 249; *see also Easter*, 467 F.3d at 464-65 ("Even if Easter failed to state an Eighth Amendment violation with regard to the delay in medical treatment, which we need not decide for purposes of the qualified immunity issue on appeal, Easter clearly stated an Eighth Amendment violation with regard to the severe chest pain he suffered during the period of time Powell refused to treat him.")

Accordingly, the undersigned respectfully recommends that Plaintiff's deliberate indifference claim against Nurse Martinez in her individual capacity pertaining to the denial of care on March 4, 2022 be retained.

## Dr. Kwarteng – Individual Capacity

Plaintiff alleges that Dr. Kwarteng, as the medical director at the McConnell Unit, is responsible for providing advice in a supervisory manner to medical providers at the unit and to insure inmates receive adequate medical care. (D.E. 1, p. 3). Plaintiff clarified in his More Definite Statement that, while Dr. Kwarteng "overseas operations of the infirmary," he did not treat Plaintiff for his broken ribs suffered in connection with his slip and fall on February 26, 2022. (D.E. 9, p. 6).

Plaintiff states that he only sues Dr. Kwarteng in his official capacity. (D.E. 9, p. 8). Out of an abundance of caution, the undersigned will consider whether Plaintiff states a deliberate indifference claim against Dr. Kwarteng in his individual capacity. Plaintiff's allegations, accepted as true, fail to show that Dr. Kwarteng had any personal involvement in connection with his treatment for his broken ribs or that he otherwise implemented any unconstitutional policies. *See Porter v. Epps*, 659 F.3d at 446; *Thompkins,* 828 F.2d at 303-04; *Thompson v. Steele,* 709 F.2d at 382. Accordingly, the undersigned respectfully recommends that Plaintiff's deliberate indifference claims against Dr. Kwarteng in his individual capacity as a supervisor be dismissed with prejudice as frivolous for failure to state a claim for relief.

### Warden Holmes – Individual Capacity

As discussed above, Plaintiff states that Warden Holmes was the McConnell Unit's senior warden at the time his filed this action and "is legal responsible for the operations of the unit as well as the supervision, care, and conduct of staff and prisoners of the institution." (D.E. 1, p. 2; D.E. 9, p. 7). Plaintiff, however, alleges no specific facts to show that Warden Holmes had any personal involvement in connection with Plaintiff's treatment for broken ribs following his February 26, 2022 slip and fall or that he otherwise implemented any unconstitutional policies. *See Porter v. Epps*, 659 F.3d at 446; *Thompkins,* 828 F.2d at 303-04; *Thompson v. Steele,* 709 F.2d at 382. Accordingly, the undersigned respectfully recommends that Plaintiff's deliberate indifference claims against

Warden Holmes in his individual capacity pertaining to Plaintiff's medical treatment be
dismissed with prejudice as frivolous for failure to state a claim for relief.

**Official Capacity – Injunctive Relief**

Liberally construed, Plaintiff seeks injunctive relief with respect to his deliberate
indifference claim pertaining to his medical treatment for his broken ribs. (D.E. 1, p. 5;
D.E. 9, pp. 6-7).  Plaintiff alleges that he has not received any follow-up x-rays on his
broken ribs, that his ribs have healed incorrectly, and that he is still in pain.   (*Id.* at 7).  He
does not know whether his ribs have fully healed.  (*Id.*).   Plaintiff believes that, due to the
delay in receiving a proper diagnosis of broken ribs, his ribs have healed incorrectly.  (D.E.
1, p. 5).  Plaintiff describes his current pain level to be a 4.  (D.E. 9, p. 7).

For purposes of injunctive relief, Plaintiff's allegations suggest that Dr. Kwarteng
would be the appropriate official to provide any requested injunctive relief with respect to
this deliberate indifference claim because he is responsible for inmate medical needs.  (D.E.
1, p. 3).   Accordingly, the undersigned respectfully recommends retaining this claim
against Dr. Kwarteng in his official capacity for injunctive relief and dismissing same with
prejudice against Warden Holmes in his official capacity for injunctive relief as frivolous
and/or for failure to state a claim for relief.

### D.  Grievance Procedures

Plaintiff states that Manager Breauz is responsible for addressing inmate grievances
and complaints regarding the medical care received.  (D.E. 1, p. 2).   Plaintiff alleges that
she is responsible for making "the determination as to whether injuries alleged in inmate

grievances are in need of immediate care or not." (D.E. 8, p. 8). On May 11, 2022, Manager Breauz allegedly responded to one of Plaintiff's Step 2 grievances (Grievance No. 2022082407). (*Id.*). Plaintiff sues Manager Breauz in her official capacity. (*Id.*).

Plaintiff's allegations, accepted as true for purposes of screening, fail to state a constitutional claim against Manager Breauz with respect to her role in addressing Plaintiff's medical grievances. A prisoner does not have a constitutional right to a grievance procedure at all. *Staples v. Keffer*, 419 F. App'x 461, 463 (5th Cir. 2011) (citing *Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005)). Inmates retain no federally-protected liberty interest in having grievances or informal complaints resolved to his or her satisfaction. *See Geiger*, 404 F.3d at 374 (because "[plaintiff] does not have a federally protected liberty interest in having [his] grievances resolved to his satisfaction . . . any alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless."). Plaintiff, therefore, fails to state any constitutional claim against Manager Breauz regarding the adequacy of the grievance procedures afforded to Plaintiff and her respective failure to answer and resolve Plaintiff's grievances in his favor.

Accordingly, the undersigned recommends that Plaintiff's constitutional claim regarding the grievance process against Manager Breauz in her official capacity be dismissed with prejudice as frivolous or for failure to state a claim for relief.

## V.     RECOMMENDATION

For the reasons stated above and for purposes of § 1915A and §1915(e)(2), the undersigned respectfully recommends that the Court **RETAIN** the following claims:

- Plaintiff's deliberate indifference claim pertaining to the dangerous conditions in his cell against **Plumber Martinez** in his individual capacity;

- Plaintiff's deliberate indifference claim pertaining to the dangerous conditions in his cell against **Warden E. Holmes** in his official capacity for injunctive relief;

- Plaintiff's deliberate indifference claim pertaining to the denial of medical care against **Nurse Martinez** in her individual capacity; and

- Plaintiff's deliberate indifference claim pertaining to the denial of medical care against **Dr. Isaac Kwarteng** in his official capacity for injunctive relief.

The undersigned will order service on these defendants by separate order.

The undersigned respectfully recommends further that:

- Plaintiff's § 1983 claims for money damages against **Warden E. Holmes, Crystal Breauz, Dr. Isaac Kwarteng, and Gary W. Pendarius** in their official capacities be **DISMISSED without prejudice** as barred by the Eleventh Amendment; and

- Plaintiff's remaining § 1983 claims against **Defendants** in their respective individual and official capacities be **DISMISSED with prejudice** as frivolous and/or for failure to state a claim for relief.

Respectfully submitted on September 14, 2023.

Julie K. Hampton
United States Magistrate Judge

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United* Servs. *Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).